EGT

# U.S. District Court
## Southern District of Florida (Miami)
### CIVIL DOCKET FOR CASE #: 1:26-cv-21328-JB

Reiser v. Federal Express Corporation et al
Assigned to: Judge Jacqueline Becerra
Cause: 28:1331 Federal Question

Date Filed: 02/27/2026
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Matthew Reiser**
*individually and on behalf of all others similarly situated*

represented by **John Allen Yanchunis , Sr.**
Morgan & Morgan
Complex Litigation Group
201 N. Franklin Street
7th Floor
Tampa, FL 33602
813-275-5272
Fax: 813-275-9295
Email: jyanchunis@forthepeople.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Federal Express Corporation**
*a Delaware corporation*

**Defendant**

**FedEx Logistics, Inc.**
*a New York corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/27/2026 | 1 | COMPLAINT against FedEx Logistics, Inc., Federal Express Corporation. Filing fees $ 405.00 receipt number AFLSDC-19263412, filed by Matthew Reiser. (Attachments: # 1 Civil Cover Sheet, # 2 Summon(s), # 3 Summon(s))(Yanchunis, John) (Entered: 02/27/2026) |
| 02/27/2026 | 2 | Clerks Notice of Judge Assignment to Judge Jacqueline Becerra. Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Edwin G. Torres is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. (gqa) (Entered: 02/27/2026) |
| 02/27/2026 | 3 | Summons Issued as to FedEx Logistics, Inc., Federal Express Corporation. (gqa) (Entered: 02/27/2026) |
| 02/27/2026 | 4 | PAPERLESS ORDER REGARDING PROCEDURES. The parties shall comply with the following procedures: 1. **SERVICE**: Federal Rule of Civil Procedure 4(m) requires service of summons and complaint to be perfected upon Defendants within 90 days after the filing of the complaint. Unless service is waived, proof of service must be made to the Court by filing the server's affidavit. If a Defendant waives service, notice of the same shall be filed immediately. Failure to file proof of service or show good cause within 90 days will result in a dismissal without prejudice and without further notice. |

2. **DEFAULTS**: In the event a served Defendant does not appear in this action, the Plaintiff(s) shall file a Motion for Clerk's Default within seven days of the deadline for the Defendant to answer. Extensions of time to answer a pleading must take the form of a motion to the Court.

Motions for Final Default Judgment shall be filed within seven days of the entry of a Clerk's Default. Any motions for default final judgment must comply with the Court's Standing Procedures Regarding Motions for Default Final Judgment found at: https://www.flsd.uscourts.gov/sites/flsd/files/JudgeBecerraStandingOrderMotionsforDefaultJudgment.pdf.

3. **CERTIFICATE OF INTERESTED PARTIES**: Within fifteen days from the date the last Defendant enters an appearance in this action, the parties, including governmental parties, must file Certificates of Interested Parties and Corporate Disclosure Statements that contain a complete list of persons, associated persons, firms, partnerships, or corporations that have a financial interest in the outcome of this case, including subsidiaries, conglomerates, affiliates, parent corporations, and other identifiable legal entities related to a party. The parties must not include the undersigned or the assigned Magistrate Judge as interested parties unless they have an interest in the litigation. Throughout the pendency of the action, the parties are under a continuing obligation to amend, correct, and update the Certificates.

4. **JOINT SCHEDULING REPORTS**: Within twenty days from the date the last Defendant enters an appearance in this action, the parties are directed to prepare and file a Joint Scheduling Report as required by Local Rule 16.1. Disclosures required under Fed. R. Civ. P. 26(a)(l) must be made at or before the time the parties confer to develop their case management and discovery plan. The parties must certify in the Joint Scheduling Report that such disclosures have been made unless a party files an objection to a required disclosure. Such filed objection must include a full explanation of the basis for the objection. The scheduling conference may be held via video conference or in person. It may not be held by telephone.

In drafting their Joint Proposed Scheduling Order, the parties shall utilize the Court's Template Scheduling Order, found at https://www.flsd.uscourts.gov/sites/flsd/files/JB_RevisedTemplateSchedulingOrder.pdf. **Any deviation** from the guidelines set forth in the Court's Template Scheduling Order or those proposed by the Local Rules **must** be noted in the Joint Scheduling Report along with an explanation for why any deviation is being proposed. **Failure to articulate the reason(s) for any deviation from the guidelines set forth in the Court's Template Scheduling Order may result in the Court setting pre-trial deadlines and/or a trial date without regard to those proposed by the parties.**

5. **FILING OF MOTIONS**: All filings must be in a 12-point font and double spaced. Single spacing is only permitted for footnotes. The required conferral under Local Rule 7.1 must be by telephone or in person. An e-mail conferral will only be permitted if counsel are in agreement as to the relief sought in the motion.

6. **EXTENSIONS OF TIME**: Requests for extensions of time, including unopposed motions, will only be granted by the Court upon an appropriate motion showing good cause why the deadline cannot be met. Absent an emergency, motions for extensions of time must be filed **no later than three business days prior to the deadline** from which relief is being sought. All requests for extensions of time must include: (1) the conferral statement required under Local Rule 7.1; (2) a list of any prior motions for extension of time; (3) a specific statement regarding the circumstances necessitating the requested relief; and (4) a statement as to whether the request impacts the deadline to file a dispositive motion or trial date.

Signed by Judge Jacqueline Becerra on 2/27/2026. (drn) (Entered: 02/27/2026)

| | | |
|---|---|---|
| 02/27/2026 | 5 | Bar Letter re: Admissions sent to attorney Clay M. Townsend, mailing date February 27, 2026, (pt) (Entered: 02/27/2026) |
| 03/10/2026 | 6 | SUMMONS (Affidavit) Returned Executed on 1 Complaint, with a 21 day response/answer filing deadline pursuant to Fed. R. Civ. P. 12 by Matthew Reiser. Federal Express Corporation served on 3/3/2026, response/answer due 3/24/2026. (Yanchunis, John) (Entered: 03/10/2026) |
| 03/10/2026 | 7 | SUMMONS (Affidavit) Returned Executed on 1 Complaint, with a 21 day response/answer filing deadline pursuant to Fed. R. Civ. P. 12 by Matthew Reiser. FedEx Logistics, Inc. served on 3/3/2026, response/answer due 3/24/2026. (Yanchunis, John) (Entered: 03/10/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 03/10/2026 16:50:20 | | | |
| PACER Login: | jayanchunis9844 | Client Code: | fedex |
| Description: | Docket Report | Search Criteria: | 1:26-cv-21328-JB |
| Billable Pages: | 3 | Cost: | 0.30 |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**MATTHEW REISER**, individually and on
behalf of all others similarly situated,

        *Plaintiff,*

v.                                   Case No. _____

**FEDERAL EXPRESS CORPORATION,**
a Delaware corporation,
**and FEDEX LOGISTICS, INC.,**
a New York corporation,

        *Defendants.*

_____/

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF**
**UNJUST ENRICHMENT,**
**AND MONEY HAD AND RECEIVED**

**INTRODUCTION**

1.      Plaintiff Matthew Reiser ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendants Federal Express Corporation and FedEx Logistics, Inc. (collectively, "FedEx" or "Defendants") to recover (a) import duties and (b) ancillary brokerage and clearance fees that FedEx collected from Plaintiff and the proposed Class on imported goods classified under Harmonized Tariff Schedule of the United States ("HTSUS") subheadings carrying a Column 1-General duty rate of "Free" (i.e., the rate applicable to goods from countries with which the United States maintains Normal Trade Relations) ("duty-free products"). For these products, the entire customs processing chain, including the duty assessment, entry filing, and brokerage fee, was triggered exclusively by tariffs imposed under the International

1

Emergency Economic Powers Act ("IEEPA"), which the United States Supreme Court has declared unlawful.

2. The proposed class consists of all persons in the United States who paid import charges to FedEx on goods classified under HTSUS subheadings with a Column 1-General duty rate of "Free" during the period the IEEPA tariffs were in effect. For these products, no duty would have been assessed under any lawful tariff authority. The IEEPA tariff was the sole source of duty liability, and every dollar of duties and associated brokerage fees FedEx collected on such shipments is directly attributable to the void tariff regime.

3. On February 20, 2026, the Supreme Court held in *Learning Resources, Inc. v. Trump*, Nos. 24-1287 & 25-250 (U.S. Feb. 20, 2026), that "IEEPA does not authorize the President to impose tariffs." Slip op. at 20.

4. According to the World Trade Organization, approximately 47.5% of all United States tariff lines, (representing approximately 50.2% of non-agricultural tariff lines), carry a zero Column 1-General duty rate. A substantial proportion of commonly imported consumer goods, including electronics and electrical equipment, sporting goods, certain apparel and footwear, scientific and medical instruments, machinery, and numerous other manufactured products, fall within duty-free classifications. For each of these products, the only duties ever assessed were IEEPA tariffs that the Supreme Court has now declared were never lawfully authorized.

5. As a customs broker that served as importer of record for consumer shipments under its default broker-inclusive service, FedEx paid IEEPA duties to CBP on behalf of Plaintiff and proposed Class members, and then billed consumers directly for "duties, taxes, and fees" to recoup the amounts FedEx had paid. FedEx also charged ancillary brokerage and clearance fees

2

for processing customs entries that, for duty-free products, would not have been required but for the void IEEPA tariffs.

6. Three days after the Supreme Court's ruling, on February 23, 2026, FedEx filed its own lawsuit in the U.S. Court of International Trade seeking a "full refund" of all IEEPA duties it paid to the United States. *See Federal Express Corp. and FedEx Logistics, Inc. v. U.S. Customs and Border Protection*, No. 26-01150 (Ct. Int'l Trade Feb. 23, 2026). FedEx's complaint seeks recovery of the very funds that consumers like Plaintiff provided to FedEx, asserting that FedEx "seek[s] *for themselves* a full refund from Defendants of all IEEPA duties [FedEx] paid to the United States." Compl. ¶ 5 (emphasis added). FedEx's CIT complaint seeks only the refund of duties and does not address the ancillary brokerage fees FedEx collected—fees that FedEx will retain even if its duty refund claim is granted.

7. This action presents an actual, concrete controversy that is ripe for adjudication. FedEx collected from consumers both unlawful IEEPA duties and ancillary fees for customs processing that was necessitated solely by those void tariffs. For duty-free products, the entire customs entry was unnecessary because the products would have entered duty-free without any formal or informal entry filing.

**PARTIES**

8. Plaintiff Matthew Reiser is an individual residing in Miami, Miami-Dade County, Florida.

9. Defendant Federal Express Corporation is a Delaware corporation with its principal place of business in Memphis, Tennessee. Federal Express Corporation is a wholly-owned subsidiary of FedEx Corporation, a Delaware holding company, and operates FedEx's express transportation and international shipping services. Federal Express Corporation conducts

3

substantial business throughout the state of Florida, including in the Southern District of Florida, and maintains a registered agent and offices in Florida. When goods are shipped internationally into the United States through FedEx's shipping services, Federal Express Corporation transports the goods and, through its affiliate FedEx Logistics, Inc., provides customs brokerage services and serves as the importer of record for consumer shipments processed as informal entries.

10.     Defendant FedEx Logistics, Inc. is a New York corporation with its principal place of business in Memphis, Tennessee. FedEx Logistics, Inc. is a wholly-owned subsidiary of FedEx Corporation and an affiliate of Federal Express Corporation, operating under common ownership and control. FedEx Logistics, Inc. is a licensed customs broker that serves as the importer of record and filer of entry for consumer shipments transported through FedEx's international shipping services, including Plaintiff's shipment at issue in this action. As reflected in the CBP Entry Summary for Plaintiff's shipment, FedEx Logistics, Inc. is identified as both the importer of record and the customs broker of record. FedEx Logistics, Inc. is also named as a co-plaintiff in the pending Court of International Trade action seeking refund of IEEPA duties, No. 26-01150. Upon information and belief, FedEx Logistics, Inc. advanced the IEEPA duties, then collected the advance from consumers and is now seeking recovery of the IEEPA duties that were funded by consumers, including Plaintiff and proposed Class members. Federal Express Corporation and FedEx Logistics, Inc. are referred to collectively herein as "FedEx" or "Defendants."

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from Defendants.

4

12.     This Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding FedEx's obligation to return to the consumers who paid them the IEEPA duties and ancillary brokerage fees FedEx collected, as well as any IEEPA duty refunds FedEx recovers from the United States.

13.     This Court has personal jurisdiction over Federal Express Corporation because it conducts continuous and systematic business in the state of Florida, ships goods to and from Florida on a daily basis, maintains operational facilities and employees in Florida, and collected the unlawful IEEPA duties and ancillary fees from Plaintiff and proposed Class members within this District.

14.     This Court has personal jurisdiction over FedEx Logistics, Inc. because, upon information and belief, it conducts business in Florida, including customs brokerage services, and because it acts in concert with Federal Express Corporation in the collection and remittance of IEEPA duties and ancillary fees at issue in this action.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including FedEx's collection of unlawful import charges from Plaintiff at his address in Miami, Florida.

<strong>FACTUAL ALLEGATIONS</strong>

**A. The IEEPA Tariffs and Their Invalidation**

16.     Beginning in February 2025, the President issued a series of executive orders invoking IEEPA to impose new tariffs on goods imported from nearly every foreign country. These included tariffs of 25% on imports from Canada and Mexico (Exec. Orders 14193 & 14194), escalating tariffs on imports from China reaching as high as 145% (Exec. Orders 14195, 14228, 14259, and 14266), and a baseline 10% tariff on nearly all other imports under the "reciprocal

tariff" order of April 2, 2025 (Exec. Order 14257), with higher country-specific rates ranging from 11% to 50% on 57 countries.

17. On February 20, 2026, the Supreme Court invalidated all IEEPA-based tariffs in a 6-3 decision. The Court stated: "We hold that IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026) (slip op. at 20).

18. CBP announced on February 22, 2026 that IEEPA duty collection would cease effective February 24, 2026.

**B. The De Minimis Exemption and Its Suspension**

19. Under 19 U.S.C. § 1321(a)(2)(C), goods imported into the United States with an aggregate fair retail value of $800 or less were exempt from duties and taxes under the so-called "de minimis" exemption. This exemption, first enacted in 1938 and raised to its current $800 threshold in 2016, allowed individual consumers to import low-value goods, personal purchases, gifts, and small commercial orders, without incurring any customs charges.

20. On April 2, 2025, the President issued Executive Order 14256, eliminating de minimis treatment for goods originating from China and Hong Kong effective May 2, 2025. As of that date, all imports from China and Hong Kong, regardless of value, became subject to applicable duties, taxes, and fees—including IEEPA tariffs.

21. On July 30, 2025, the President issued Executive Order 14324, suspending de minimis treatment for goods originating from all countries, effective August 29, 2025. As of that date, all imported goods, regardless of value, country of origin, or mode of transportation, became subject to all applicable duties, taxes, and fees.

22. The suspension of the de minimis exemption, coupled with the imposition of IEEPA tariffs, subjected consumers who had previously imported low-value goods duty-free to

new customs charges for the first time. FedEx responded to this regulatory change by developing new fee structures and clearance processes to handle the vastly increased volume of dutiable shipments.

23. For products classified under HTSUS subheadings with a Column 1-General duty rate of "Free", however, the de minimis suspension was effectively immaterial to the duty calculus—because the applicable Column 1-General rate was already zero, the suspension of the exemption did not create any lawful duty liability. For duty-free products, the IEEPA tariff was the sole source of any duty assessment regardless of shipment value or whether the de minimis exemption applied. The de minimis suspension expanded the number of shipments requiring customs entries, but for duty-free products, the IEEPA tariff—not the suspension of the exemption—was the triggering cause of duty assessment and associated fees.

**C. Column 1-General Duty-Free Products**

24. The Harmonized Tariff Schedule of the United States assigns a Column 1-General duty rate to every product classification. For products classified under HTSUS subheadings with a Column 1-General rate of "Free", no duty would have been assessed under any lawful tariff authority, regardless of shipment value or whether the de minimis exemption applied. The IEEPA tariffs were the sole source of any duty liability on these products.

25. According to the World Trade Organization, approximately 47.5% of all United States tariff lines—representing approximately 50.2% of non-agricultural tariff lines—carry a zero Column 1-General duty rate. These duty-free classifications span a wide range of consumer product categories, including electronics and electrical equipment, sporting goods, certain textiles and footwear, scientific and medical instruments, machinery, and numerous other commonly imported manufactured products.

26. For every shipment of a duty-free product during the IEEPA period, the causal chain is direct and unbroken: (a) the IEEPA executive orders imposed the sole duty on the product; (b) the duty triggered the requirement for a customs entry filing; (c) the customs entry triggered FedEx's assessment of ancillary brokerage and clearance fees; and (d) the Supreme Court declared the IEEPA tariffs void *ab initio*. But for the void IEEPA tariffs, there would have been no duty, no customs entry, and no brokerage fee.

27. For the duty-free classification, one hundred percent of the duties collected on such products, and one hundred percent of the brokerage fees charged to process those duties, are attributable to the void IEEPA regime.

**D. FedEx's Role as Customs Broker and Importer of Record**

28. When goods are shipped internationally into the United States via FedEx under its default broker-inclusive service, FedEx Logistics, Inc. acts as the customs broker and the importer of record. For consumer shipments, FedEx Logistics processes the entries as informal entries through CBP's Automated Broker Interface ("ABI") system and serves as the importer of record. The individual consumer who purchased the goods does not appear on the CBP entry as the importer of record and has no direct relationship with CBP regarding the duty obligation.

29. In its capacity as customs broker and importer of record, FedEx advances duties, taxes, and fees to CBP on behalf of the recipient of the imported goods. FedEx then bills the recipient directly for those charges, collecting the amounts through its "FedEx Import Tool" ("FiT") or similar billing mechanisms.

30. FedEx's collection of import charges from consumers is a pass-through arrangement: FedEx pays CBP and then seeks dollar-for-dollar reimbursement from the individual

consumer. The consumer bore the economic burden of the tariff, not FedEx. FedEx is a conduit that advances the duty to CBP and then collects reimbursement from the consumer.

31.     FedEx's own import charge notifications to consumers confirm this pass-through nature. FedEx's emails to Plaintiff stated that "Your duties, taxes, and fees are due," identifying them as the consumer's obligation, not FedEx's obligation, which FedEx was merely facilitating.

**E. FedEx's Ancillary Brokerage and Clearance Fees**

32.     FedEx also charged additional ancillary fees in connection with customs entry processing, including a U.S. Inbound Processing Fee and, in certain cases, a Disbursement Fee or Duty and Tax Forwarding Fee. For duty-free products, these fees were charged to process customs entries that would not have existed but for the void IEEPA tariffs.

33.     For duty-free products, the ancillary brokerage fees represent charges for services that were necessitated solely by the void IEEPA tariffs. The customs entry itself was unnecessary since the products would have entered duty-free without any formal or informal entry filing, and FedEx's fees for processing those entries are therefore independently recoverable as damages flowing from the void tariff regime. Even if FedEx refunds the void duties, the brokerage fees remain unlawful charges for which there was no lawful basis.

**F. Plaintiff's Transaction**

34.     On or about January 27, 2026, Plaintiff placed an order with Tennis Warehouse Europe, an online retailer based in Schutterwald, Germany, for one pair of Yonex PC Eclipsion 5 Clay tennis shoes at a price of €92.95, plus €24.00 for FedEx International Economy shipping, for a total of €116.95. The declared customs value of the goods was $140.00.

35.     On or about January 28, 2026, Tennis Warehouse Europe shipped the order via FedEx International Economy under FedEx Tracking ID 510761788014.

9

36. On February 11, 2026, FedEx sent Plaintiff an email notification, with the subject line "Import charge payment due for your FedEx shipment 510761788014," stating "Your duties, taxes, and fees are due. Completing this payment online can help avoid any unnecessary delays." The email stated "Payment Due USD $36.00."

37. On February 12, 2026, Plaintiff was required to pay the $36.00 charge demanded by FedEx. Subsequently, FedEx issued a payment confirmation under Receipt Number 36808982 for Tracking ID 510761788014.

38. Upon information and belief, the $36.00 collected by FedEx from Plaintiff consisted of $21.00 in IEEPA duties assessed on the imported goods from Germany, with the remainder constituting FedEx's customs brokerage and duty advancement fees, including Clearance Entry Fees and related ancillary charges.

39. As reflected in the CBP Entry Summary, the goods were classified under HTSUS 9506.59.8060, which carries a Column 1-General duty rate of "Free". The entire $21.00 duty was assessed under HTSUS 9903.02.20, the reciprocal tariff on EU imports imposed pursuant to IEEPA, Executive Order 14257 of April 2, 2025, as amended by the Executive Order of July 31, 2025 entitled "Further Modifying the Reciprocal Tariff Rates," at a rate of 15% on the entered value of $140.00. Absent the IEEPA tariff regime, Plaintiff's shipment would have entered the United States entirely duty-free under the applicable Column 1-General rate, no customs entry would have been required, and Plaintiff would have incurred neither the $21.00 duty nor the $15.00 in ancillary brokerage and clearance fees charged by FedEx. The entirety of the $36.00 charged to Plaintiff is thus directly attributable to the IEEPA tariff - both the void duty and the fees for processing a customs entry that should never have been filed.

40.     On February 23, 2026, FedEx filed a complaint in the U.S. Court of International Trade seeking "for themselves a full refund from Defendants of all IEEPA duties paid by importers." Federal Express Corp. and FedEx Logistics, Inc. v. U.S. Customs and Border Protection, No. 26-01150, Compl. ¶ 5 (Ct. Int'l Trade Feb. 23, 2026).

41.     FedEx's complaint establishes standing based on its status as "the importers of goods imported into the United States" who "have paid IEEPA duties to the United States and thus have suffered injury caused by those orders." Federal Express Corp. and FedEx Logistics, Inc. v. U.S. Customs and Border Protection, No. 26-01150, Compl. ¶ 14.

42.     FedEx's complaint is entirely silent on whether FedEx intends to return to its customers any refund it receives from the government. The complaint contains no acknowledgment of any pass-through obligation, no commitment to establish a refund mechanism for consumers, and no recognition that the "injury" FedEx claims to have suffered was in fact borne by millions of individual consumers. While FedEx has stated on its website that it intends to issue IEEPA refunds to shippers and consumers if refunds are obtained, this voluntary representation is not reflected in FedEx's CIT complaint, creates no legally enforceable obligation, and is expressly contingent on future government and court guidance that may never materialize.

43.     Further, FedEx's CIT complaint seeks only the refund of duties and does not address the ancillary brokerage and clearance fees FedEx collected to process customs entries necessitated by the void IEEPA tariffs. Even if FedEx recovers a full duty refund from the government, FedEx will retain the brokerage fees collected from consumers, which are fees for processing entries that should never have been filed on duty-free products. This creates a separate and independent basis for unjust enrichment.

11

44.     The government itself has acknowledged the refund obligation. In seeking a stay of the Court of International Trade's judgment in V.O.S. Selections, the government represented that if tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government would issue refunds to plaintiffs, including any interest that accrues. The Supreme Court has now held the tariffs unlawful, making FedEx's recovery of a refund not speculative but highly probable.

45.     Because FedEx is the importer of record, only FedEx has standing to seek a refund of duties from CBP through the Court of International Trade. Individual consumers, including Plaintiff and proposed Class members, have no direct avenue to recover from the government the IEEPA duties they paid through FedEx. This structural asymmetry is the core inequity this action seeks to remedy: FedEx holds the legal right to recover from the government, but the consumers paid these sums to FedEx, and FedEx should refund to Class members the unlawful sums charged to and collected from them, including both the void duties and the ancillary fees.

46.     This creates an actual, concrete controversy between Plaintiff and FedEx that is ripe for adjudication.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

48.     Plaintiff seeks to represent a class defined as:

> "All persons and entities in the United States who, during the period from February 4, 2025 through February 24, 2026, paid to Federal Express Corporation or FedEx Logistics, Inc. any of the following in connection with imported goods classified under Harmonized Tariff Schedule of the United States ("HTSUS") subheadings carrying a Column 1-General duty rate of "Free": (a) tariff charges assessed under the International Emergency Economic Powers Act ("IEEPA"), including duties imposed under Chapter 99 IEEPA

subheadings; and/or (b) brokerage, clearance, or other ancillary fees charged in connection with customs entries filed to process such IEEPA tariffs (the 'Class')"

49. Excluded from the proposed Class are FedEx, its officers, directors, and employees; any entity in which FedEx has a controlling interest; and the judges and staff of any court to which this action is assigned

50. Numerosity (Rule 23(a)(1)): The proposed Class consists of millions of individuals who imported duty-free goods into the United States through FedEx during the class period and were charged IEEPA duties and ancillary brokerage fees by FedEx. Given that approximately 47.5% of all U.S. tariff lines carry a Column 1-General rate of zero, and FedEx handles millions of international shipments, the proposed Class is so numerous that joinder of all members is impracticable.

51. Commonality (Rule 23(a)(2)): There are questions of law and fact common to the Class that are capable of generating common answers, including: whether the IEEPA tariffs were void ab initio; whether Class members' goods were classified under HTSUS subheadings with Column 1-General duty rate of "Free"; whether the customs entries filed by FedEx for such goods were necessitated solely by the void IEEPA tariffs; whether FedEx is obligated to return the duties and ancillary fees to the consumers who paid them; whether FedEx's retention of both consumer payments and government refunds constitutes unjust enrichment; whether ancillary brokerage fees charged for processing entries necessitated solely by void tariffs are independently recoverable; and the appropriate measure of restitution.

52. Typicality (Rule 23(a)(3)): Plaintiff's claims are typical of the proposed Class. Plaintiff's goods (HTSUS 9506.59.8060) carry a Column 1-General duty rate of FREE. Like all proposed Class members, the entire duty and the entire ancillary fee assessed against Plaintiff were

attributable solely to the void IEEPA tariff regime. Plaintiff paid both the void duty and the ancillary fees to FedEx, and has not received a refund.

53. Adequacy (Rule 23(a)(4)): Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff's interests are not antagonistic to or in conflict with the interests of the proposed Class. Plaintiff has retained counsel experienced in complex commercial litigation and class action litigation.

54. Rule 23(b)(2): FedEx has acted on grounds that apply generally to the proposed Class, making declaratory and injunctive relief appropriate with respect to the proposed Class as a whole. FedEx's uniform practice of collecting IEEPA duties and ancillary fees from consumers, seeking a blanket refund from the government, and failing to establish any mechanism to return those funds to consumers warrants class-wide declaratory and injunctive relief.

55. Rule 23(b)(3): The common questions of law and fact identified above predominate over any individual questions, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The duty-free class definition eliminates the most significant potential individualized issue i.e., whether a given shipment's duties were attributable to IEEPA versus pre-existing tariffs, because for duty-free products, the Column 1-General rate is zero and the IEEPA tariff was the sole source of duty liability. Whether a product is duty-free is determined mechanically by matching the HTSUS subheading in the customs entry to the published tariff schedule, requiring no individualized inquiry. Individual proposed Class members' claims are modest in amount (as illustrated by Plaintiff's $36.00 charge), making individual litigation impracticable. FedEx maintains centralized records of all duties and fees collected from each customer, including the HTS classification code for every shipment, making class-wide adjudication and distribution of refunds administratively feasible.

## COUNT I
## DECLARATORY RELIEF
### (28 U.S.C. § 2201) (On Behalf of Plaintiff and the Proposed Class)

56.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 55.

57.     An actual, justiciable controversy exists between Plaintiff and FedEx regarding the rights and obligations of the parties with respect to IEEPA duties and ancillary brokerage fees collected by FedEx from Plaintiff and proposed Class members on duty-free products. This controversy is not hypothetical or abstract: FedEx has already filed suit in the Court of International Trade to recover the duty funds at issue, the Supreme Court has declared the underlying tariffs unlawful, and FedEx has not refunded the IEEPA duties or ancillary brokerage fees to Plaintiff or proposed Class members.

58.     Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

    a.  the IEEPA duties collected by FedEx from Plaintiff and the proposed Class on duty-free products were collected pursuant to tariffs that were never lawfully authorized and that FedEx has no legal right to retain;

    b.  for duty-free products, the customs entries filed by FedEx were necessitated solely by the void IEEPA tariffs, and the ancillary brokerage and clearance fees charged to process those entries are recoverable as charges for which there was no lawful basis;

    c.  FedEx is obligated to return to Plaintiff and proposed Class members all IEEPA duties and ancillary brokerage fees collected from them on duty-free products, together with interest;

d.  FedEx is obligated to provide a full accounting of all IEEPA duties and ancillary fees it collected from proposed Class members during the class period.

59.  Declaratory relief is necessary and appropriate because FedEx collected duties and fees pursuant to tariffs that the Supreme Court has declared were never lawfully authorized, FedEx has not returned those sums to the consumers who paid them, and FedEx has separately filed suit to recover from the government the very funds that consumers provided to FedEx. Without judicial intervention, Plaintiff and the Class have no assurance that FedEx will return the unlawfully collected sums.

60.  Class members have no alternative remedy. Because FedEx served as the importer of record, only FedEx has standing to seek a refund from CBP. Individual consumers cannot file suit in the Court of International Trade to recover duties they paid through FedEx. And there is no administrative mechanism for consumers to recover ancillary brokerage fees from FedEx. Without the declaratory relief sought in this action, Class members will be left without any mechanism to recover the unlawful tariffs and fees they were forced to pay.

**COUNT II**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

61.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 55.

62.  Plaintiff and Class members conferred a benefit upon FedEx by paying IEEPA duties and ancillary brokerage fees that FedEx billed to them in connection with the importation of goods into the United States.

16

63.     FedEx had knowledge of and appreciated the benefit conferred upon it, as FedEx deliberately billed and collected IEEPA duties and ancillary fees from Plaintiff and Class members through its import charge billing system.

64.     The Supreme Court has declared the IEEPA tariffs unlawful. The duties were void ab initio and were never lawfully authorized. There was therefore no lawful basis for FedEx to collect these charges from Plaintiff and Class members in the first instance.

65.     FedEx's unjust enrichment extends beyond the void duties to the ancillary brokerage and clearance fees. For duty-free products, the customs entries processed by FedEx were necessitated solely by the void IEEPA tariffs. No customs entry would have been required but for the unlawful tariffs. FedEx charged fees for processing entries that should never have been filed, and now seeks to retain those fees even as it acknowledges (through its CIT filing) the void status of the underlying tariffs. Every dollar FedEx collected in brokerage fees on duty-free products was a charge for which there was no lawful consideration.

66.     FedEx's collection and retention of these funds is inequitable and unjust. FedEx has been unjustly enriched at the expense of Plaintiff and the Class unless it returns both the void duties and the ancillary fees to Class members who originally paid them.

67.     Plaintiff and the Class are entitled to restitution of all IEEPA duties and ancillary brokerage fees they paid to Defendants on duty-free products, plus prejudgment interest.

## COUNT III
## MONEY HAD AND RECEIVED
### (On Behalf of Plaintiff and the Class)

68.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 55.

69.     FedEx received money from Plaintiff and Class members in the form of IEEPA duties and ancillary brokerage fees that FedEx billed and collected from them.

70.     FedEx received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to CBP as lawfully assessed duties on imported goods, and for the purpose of compensating itself for customs entry processing services. The Supreme Court has now held that the IEEPA tariffs were never lawfully authorized, rendering the predicate for FedEx's collection void ab initio. For duty-free products, the customs entries were unnecessary and the processing services had no lawful basis.

71.     The consideration for these payments has failed in whole. Proposed Class members paid FedEx to satisfy a duty obligation that never lawfully existed and to compensate FedEx for customs processing that was necessitated solely by a void tariff regime.

72.     In equity and good conscience, FedEx should not be permitted to retain these funds. The money belongs to Plaintiff and the Class, and FedEx is obligated to return it.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

(a)     Certify this action as a class action under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel;

(b)     Enter a declaratory judgment that FedEx is obligated to refund to Plaintiff and the Class all IEEPA duties and ancillary brokerage fees it collected from them on duty-free products, and that FedEx is required to provide a full accounting of all IEEPA duties and ancillary fees collected from proposed Class members;

(c)      Award Plaintiff and the Class restitution and/or damages in the amount of all IEEPA duties and ancillary brokerage fees collected by FedEx from the proposed Class on duty-free products, plus prejudgment interest;

(d)      Award Plaintiff and the Class their reasonable attorneys' fees and costs of suit; and

**(e)**      Grant such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 27, 2026              Respectfully submitted,

/s/ John A. Yanchunis
John A. Yanchunis
JYanchunis@forthepeople.com
Patrick Barthle
Pbarthle@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 North Franklin Street 7th Floor
Tampa, Florida 33602
T: (813) 223-5505
F: (813) 223-5402

Clay M. Townsend, Esq.
Florida Bar No. 363375
**MORGAN & MORGAN, P.A.**
20 N Orange Ave, Suite 1600
Orlando, FL 32801
P: (407) 418-2075
F: (407) 245-3346
ctownsend@forthepeople.com

19
