RMM

# U.S. District Court
## Southern District of Florida (West Palm Beach)
## CIVIL DOCKET FOR CASE #: 9:26-cv-80232-AMC

CYCLE LIMITED, LLC et al v. Federal Express Corporation et al
Assigned to: Judge Aileen M. Cannon
Cause: 28:1332 Diversity-Declaratory Judgment

Date Filed: 03/05/2026
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Diversity

**Plaintiff**

**CYCLE LIMITED, LLC**                    represented by **Daniel Lader**
Margulis Gelfand DiRuzzo & Lambson
500 East Broward Blvd
Suite 900
Fort Lauderdale, FL 33394
954-615-1676
Fax: 954-827-0340
Email: dan@margulisgelfand.com
*ATTORNEY TO BE NOTICED*

**Joseph Andrew DiRuzzo , III**
Margulis Gelfand DiRuzzo & Lambson
LLC
500 East Broward Blvd.
Suite 900
Ft. Lauderdale, FL 33394
954-615-1676
Fax: 954-827-0340
Email: jd@margulisgelfand.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**NICHOLAS R. METCALF**                    represented by **Daniel Lader**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Andrew DiRuzzo , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Federal Express Corporation**

**Defendant**

**FedEx Logistics, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/05/2026 | 1 | COMPLAINT against All Defendants. Filing fees $ 405.00 receipt number AFLSDC-19285490, filed by CYCLE LIMITED, LLC, NICHOLAS R. METCALF. (Attachments: # 1 Exhibit exhibit 1, # 2 Exhibit exhibit 2, # 3 Exhibit exhibit 3, # 4 Exhibit exhibit 4, # 5 Exhibit exhibit 5, # 6 Civil Cover Sheet, # 7 Summon(s), # 8 Summon(s))(DiRuzzo, Joseph) (Entered: 03/05/2026) |
| 03/05/2026 | 2 | Clerks Notice of Judge Assignment to Judge Aileen M. Cannon. <br><br> Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Ryon M. McCabe is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. (kpe) (Entered: 03/05/2026) |
| 03/05/2026 | 3 | Summons Issued as to FedEx Logistics, Inc., Federal Express Corporation. (kpe) (Entered: 03/05/2026) |
| 03/05/2026 | 4 | NOTICE OF COURT PRACTICES ON SEALING/REDACTION: Notwithstanding the requirements of Local Rule 5.4 and/or any protective order, the parties are prohibited from filing anything under seal or from redacting any content from a court filing or exhibit/attachment (except for the personal data identifiers listed in Section 6A of this District's CM/ECF Administrative Procedures) unless the party with a stated interest in sealing/redaction first seeks and obtains permission from the Court via a motion for leave. The motion for leave must be filed after meaningful conferral with the opposing party (or parties) and be filed publicly except as authorized by prior Court order. Additionally, the motion for leave shall specify the particularized basis for sealing the proposed material; shall describe the information/documents to be sealed with as much specificity as possible but without attaching the proposed sealed material; shall indicate the proposed duration of the seal request and the reasons why means other than sealing are unavailable or unsatisfactory; shall contain a separate certificate of conference section indicating the results of the parties' meaningful conferral; and shall be filed at last three business days before any related deadline to permit adequate Court consideration. The party seeking authorization to seal material shall not file or otherwise attach the subject material until the Court has ruled on the motion for leave. Finally, all parties are advised that mere designation of material as confidential and/or otherwise subject to a protective order does not bind the Court, does not supplant the requirements of the Local Rules on sealing, and does not otherwise relieve the party seeking sealing/redaction from justifying its request under applicable legal principals governing the presumption of public access to civil proceedings. Failure to comply with this Notice may result in immediate unsealing of any unauthorized shielded material. Signed by Judge Aileen M. Cannon on 3/5/2026. (jj02) (Entered: 03/05/2026) |
| 03/06/2026 | 5 | ORDER REQUIRING DOCKETED PROOF OF SERVICE; REQUIRING COMBINED RESPONSES; AND SETTING TYPEFACE REQUIREMENTS. Signed by Judge Aileen M. Cannon on 3/6/2026. *See attached document for full details.* (ebz) (Entered: 03/06/2026) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/10/2026 16:53:09 | | |
| **PACER Login:** jayanchunis9844 | **Client Code:** fedex | |
| **Description:** Docket Report | **Search Criteria:** | 9:26-cv-80232-AMC |

| Billable Pages: | 2 | Cost: | 0.20 |
|---|---|---|---|

| Billable Pages: | 2 | Cost: | 0.20 |
|---|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

```
_____x
CYCLE LIMITED, LLC, and NICHOLAS R. METCALF,    :
individually and on behalf of all others similarly situated,  :      case no. 9:26-cv-80232
            Plaintiffs,                         :
                                                :
v.                                              :
                                                :
FEDERAL EXPRESS CORPORATION, and                :
FEDEX LOGISTICS, INC.,                          :
            Defendants.                         :
_____x
```

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs, CYCLE LIMITED, LLC and NICHOLAS METCALF, by and through undersigned counsel, allege as follows:

### INTRODUCTION

1. Defendants, FEDERAL EXPRESS CORPORATION, and FEDEX LOGISTICS, INC. (collectively "Defendants"), are importers, as defined in 19 C.F.R §1 01.1, of merchandise into the United States.

2. Beginning in February of 2025, through a series of executive orders, the President of the United States invoked the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, as authority to impose new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Defendants source their imports and transport imports on behalf of their customers.

3. Defendants acted as the Plaintiffs' and the Class Members' agents and/or fiduciaries by collecting the IEEPA duties from the Plaintiffs and the Class Members and then remitting the IEEPA duties to the federal government.

4. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 2026 WL 477534, slip op. at 20 (U.S. Feb. 20, 2026) (affirming V.O.S. *Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

5. The Supreme Court also confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the Court of International Trade ("CIT"). *Id.* at 5.

6. A mere three days after the Supreme Court issued its decision in *Learning Resources,* FedEx filed suit against the federal government in the United States Court of International Trade. *See Federal Express Corp., et al. v. U.S. Customs and Boarder Protection, et al.,* case no. 1:26-cv-1150 (U.S. Ct. of Internation Trade) (the "CIT case").

7. In the CIT case, the Defendants allege that they have standing to bring the CIT lawsuit because they are the importers of goods imported into the United States from countries subject to the IEEPA duties as implemented and collected by Customs and Border Protection ("CBP"), which have been held by the Supreme Court in *Learning Resources* to be unlawful. As a result of the executive orders identified in the CIT lawsuit, Defendants have paid IEEPA duties to the federal government and thus have suffered injury caused by those orders.

8. However, as Justice Kavanaugh observed: "[t]he United States may be required to refund billions of dollars to importers who paid the IEEPA tariffs, even though some importers may have already passed on costs to consumers or others." *Learning Res.,* 2026 WL 477534, at *51 (Kavanaugh, *J.* dissenting).

9. Indeed, yesterday the United States Court of International Trade "ORDERED that, with respect to any and all unliquidated entries that were entered subject to the IEEPA duties, U.S. Customs

and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties." *Atmus Filtration, Inc., v. United States,* case no. 1:26-cv-1259 1150 (U.S. Ct. of Internation Trade) at ECF No. 21.

10. In this case, the Plaintiffs seek to, *inter alia,* prevent the Defendants from becoming unjustly enriched because, as detailed more fully below, the Defendants passed along the costs of the IEEPA tariffs to the Plaintiffs and the Class Members. In other words, the Plaintiffs and the Class Members are the parties that suffered the economic burden of the IEEPA tariffs, thus, allowing the Defendants to keep the tariff refunds would be unjust and operate as a windfall to the Defendants.

## PARTIES, JURISDICTION, VENUE, & DEMAND FOR JURY TRIAL

11. CYCLE LIMITED, LLC is limited liability company formed under the laws of the State of Florida and is a retailer specializing in new and certified pre-owned high-end bicycles. CYCLE LIMITED, LLC is, for federal diversity purposes, a citizen of the State of Florida because its two members (Arie Eric Israelian and Danny Israelin) are citizens of the State of Florida and reside within this judicial district.

12. NICHOLAS R. METCALF graduated from the University of Michigan in 2007, received his J.D. Magna Cum Laude from DePaul University College of Law in 2011, and received his LL.M. with Distinction from Georgetown University Law Center in 2012. METCALF clerked at the United States Tax Court for two years and, in 2019, formed the Law Office of Nicholas R. Metcalf. METCALF is, for federal diversity purposes, a citizen of the Commonwealth of Virginia.

13. Defendant, FEDERAL EXPRESS CORPORATION, is incorporated in the State of Delaware and has a principal place of business in Memphis, Tennessee, and, for federal diversity purposes, is a citizen of the State of Tennessee.

14. Defendant, FEDEX LOGISTICS, INC., is incorporated in the State of Delaware and has a principal place of business in Memphis, Tennessee and, for federal diversity purposes, is a citizen of the State of Tennessee.

15. Defendants are amenable to suit in Florida under Fla. Stat. § 48.193, because Defendants regularly and systematically conduct business in this State.

16. Jurisdiction is appropriate in this Court under 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000 and the Plaintiffs are completely diverse from the Defendants.

17. Jurisdiction is also appropriate in this Court under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, codified in part at 28 U.S.C. § 1332(d)(2), as both Plaintiffs are citizens of states (*i.e.*, Florida and Virginia) that are different from the Defendants (*i.e.*, Delaware and Tennessee), and the amount in controversy exceeds $5,000,000 (*see infra* at ¶50).

18. This Court also has jurisdiction to provide declaratory relief under 28 U.S.C. § 2201, as there is a *bona fide* dispute as to whether the Defendants (i) were the Plaintiffs' and the Class Members' agents; (ii) have an agency and/or fiduciary relationship to the Plaintiffs and the Class when the Plaintiffs and the Class relied upon the Defendants to remit their respective IEEPA duties to the federal government; (iii) have a legal right to IEEPA duty refunds (including statutory interest thereon); and (iv) have the obligation to return the Plaintiffs' and the Class Members' IEEPA duties that the Supreme Court has held to be in violation of the statutory scheme. This Court also has the power to provide declaratory relief under Fla. Stat. § 86.021.

19. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(2), as CYCLE LIMITED, LLC conducts its operations in this judicial district, CYCLE LIMITED, LLC paid the Defendants its IEEPA duties in this judicial district, and thus "a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

20. In the alternative, if there is no district in which an action may otherwise be brought, venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(3), as the Defendants are subject to this Court's personal jurisdiction.

21. Pursuant to Local Rule 3.1, this matter is properly instituted in the West Palm Beach Division of the Southern District of Florida, as Palm Beach County has the greatest nexus to this case.

22. A trial by jury is demanded pursuant to the Seventh Amendment and Fed. R. Civ. P. 38.

## LEGAL BACKGROUND

23. CBP is the federal agency charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

24. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

25. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the

Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

26. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with Presidential orders. 19 U.S.C. §§ 1202, 3005, 3006.

27. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

28. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

29. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

30. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

31. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

32. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, CBP liquidates entries 314 days after the date of entry of the goods (automatic liquidation cycle) and will post a notice on its website. 19 C.F.R. § 159.9.

33. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

34. Once liquidation has occurred, *and if the liquidation is protestable*, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514. *See also* 19 U.S.C. § 1501 (CBP can also voluntarily reliquidate within 90 days of the liquidation). But not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. 19 U.S.C. § 1514.

35. On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs.

36. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border* (Feb. 7, 2025), imposed an additional 25% tariff on the import of goods from Mexico, with certain exceptions.

37. The executive order directed at Canada, Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025), imposed a 25% tariff, with certain exceptions.

38. The executive order directed at China, Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 1, 2025), imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

39. Four days later, on February 5, 2025, the President issued another order, Executive Order 14,200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025).

40. The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025), which raised the incremental tariffs on imports from China to 20%.

41. On April 2, 2025, citing trade deficits with this country's trading partners as a national emergency, the President issued Executive Order 14,257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025), which imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, 2025, and additional "reciprocal" tariffs on 57 countries, effective April 9, 2025. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

42. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

43. The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025). Meanwhile, the 20% tariff on imports from

8

China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

44. Through these executive orders, the President directed changes to the Harmonized Tariff Schedule of the United States, requiring that goods subject to the challenged tariffs be entered under new tariff codes.

45. On April 14, 2025, several companies filed an action in the CIT challenging the legality of these tariff orders. *See V.O.S. Selections, et al. v. Trump, et al.*, No. 25-cv-00066 (Dkt. 2). The CIT held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed. The Federal Circuit's decision was, in turn, affirmed by the Supreme Court on February 20, 2026.

46. In the months following the *V.O.S. Selections* complaint, the President, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying others.

47. However, on February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.

48. In response to the Supreme Court's decision in *Learning Resources*, the federal government announced on February 22, 2026, that duties imposed under the Challenged Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026).[1]

---

[1] *See* https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_.

49. The CIT has held that it has the authority to order reliquidated entries subject to IEEPA duties. *See In AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025). In a related action, the federal government has represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

50. Upon information and belief, as of December 14, 2025, the federal government collected $133.5 billion IEEPA tariff payments from U.S. Importers, and that number is estimated to be approximately $160 billion as of February 20, 2026.[2]

**FACTS**

51. In October 2025, METCALF purchased $138.40 worth of merchandise from the Netherlands. Ex. 1.

52. On November 15, 2025, METCALF received an email from an email address associated with and controlled by Defendants, noreply@fedex.com, informing METCALF that he was required to pay $62.42. Ex. 2.

53. METCALF paid the $62.42 to the Defendants. Ex. 3.

54. The $62.42 METCALF paid to the Defendants was for IEEPA duties.

55. The Defendants, acting as the agent and/or fiduciary for METCALF, paid the $62.42 in IEEPA duties to the federal government.

---

[2] https://taxfoundation.org/blog/supreme-court-trump-tariffs-ruling/#:~:text=As%20of%20December%2014%2C%202025%2C%20the%20latest,they%20have%20generated%20at%20least%20$160%20billion.

56. In August 2025, CYCLE LIMITED, LLC purchased €195,386.50 worth of inventory from the Netherlands.

57. On August 25, 2025, CYCLE LIMITED, LLC was invoiced by the Defendants in the amount of $45,424.14 for a "Customs Duty." Ex. 4.

58. CYCLE LIMITED, LLC paid the $45,424.14 to the Defendants.

59. The $45,424.14 CYCLE LIMITED, LLC paid to the Defendants was for IEEPA duties.

60. The Defendants, acting as the agent and/or fiduciary for CYCLE LIMITED, LLC, paid the $45,424.14 in IEEPA duties to the federal government.

61. Separately, in August 2025, CYCLE LIMITED, LLC purchased €197,134.50 worth of inventory from the Netherlands.

62. On August 26, 2025, CYCLE LIMITED, LLC was invoiced by the Defendants in the amount of $32,728.20 for a "Customs Duty." Ex. 5.

63. CYCLE LIMITED, LLC paid the $32,728.20 to the Defendants.

64. The $32,728.20 CYCLE LIMITED, LLC paid to the Defendants was for IEEPA duties.

65. The Defendants, acting as the agent and/or fiduciary for CYCLE LIMITED, LLC, paid the $32,728.20 in IEEPA duties to the federal government.

66. As the Defendants have asserted in the CIT case, in supporting the Defendants' entitlement to IEEPA duty refunds, the Defendants (i) have paid IEEPA duties imposed by the Challenged Tariff Orders; (ii) have imported items into the United States that are subject to IEEPA tariffs entered the United States under new HTSUS codes from foreign countries; and (iii) have paid IEEPA duties on numerous entries.

67. Accordingly, the relief the Defendants seek in the CIT case is, *inter alia,* to "order the United States to refund to [FedEx] the duties collected from [FedEx] on all entries subject to IEEPA duties, with interest as provided by law[.]"

68. However, by virtue of the order entered in *Atmus Filtration, see supra* at ¶9, the Defendants are all but guaranteed to receive the IEEPA duties that the Defendants have sued for in the CIT case.

69. The Defendants have not provided any assurances to the Plaintiffs and the Class that the Defendants would return/refund, or otherwise remit to the Plaintiffs and the Class, the amounts illegally paid in IEEPA duties (including statutory interest thereon).

70. The Plaintiffs and the Class have not assigned their rights to the IEEPA duties paid to the federal government to the Defendants (or anyone else for that matter).

**CLASS ALLEGATIONS**

71. Plaintiffs bring this Complaint individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

72. The class Plaintiffs represent (the "Class") is initially defined as: "Anyone (including but not limited to individuals and businesses) who paid IEEPA duties to the Defendants that were held to be illegal by the Supreme Court, which the Defendants are either seeking or have received a refund of said IEEPA duties from the federal government."

73. Excluded from the proposed Class is any Judge to whom this case is assigned, any of the Judge's staff associate with the disposition of this case (*e.g.*, law clerks), as well as his/her/their immediate family.

## Numerosity of the Class – Rule 23(a)(1)

74. The proposed Class is so numerous that joinder of all members is impractical. While the exact number and identity of Class Members is unknown to the Plaintiffs at this time and can only be ascertained through appropriate discovery, upon information and belief (together with a good dose of common sense), the number of class members in the Class is in the hundreds of thousands, if not millions.

75. The Class that the Plaintiffs represent is therefore so numerous such that joinder of each member of the Class is impracticable.

## Existence and Predominance of Common Questions - Fed. R. Civ. P. 23(a)(2), 23(b)(3)

76. Questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Those common questions include, but are not limited to, the following: (A) Were the Defendants acting as the Plaintiffs' and the Class Members' agents and/or fiduciaries in collecting the IEEPA duties? (B) If so, do the Defendants owe the Plaintiffs and the Class Members a fiduciary duty? (C) If so, do the Defendants have the fiduciary duty to return/refund/remit the IEEPA duties to the Plaintiffs and the Class Members? (D) Are the Defendants in breach of their fiduciary duties by failing to return/refund/remit the IEEPA duties to the Plaintiffs and the Class Members? (E) Do the Defendants have the legal obligation to provide an accounting to the Plaintiffs and the Class for the IEEPA duties remitted to the federal government? And (F) Would the Defendants be unjustly enriched if the Defendants are permitted to keep the IEEPA duties paid by the Plaintiffs and the Class Members.

**Typicality – Rule 23(a)(3)**

77. The claims of the Plaintiffs are typical of the claims of the Class Members because they suffered the economic burden of paying the IEEPA duties that the Supreme Court struck down and that the Defendants are seeking to recover in the CIT case.

**Adequacy of Representation – Rule 23(a)(4)**

78. Plaintiffs will fairly and adequately protect the interests of the Class Members because their interests are aligned with those of the Class Members they seek to represent. Plaintiffs have retained competent counsel experienced in (i) complex tax litigation, (ii) complex federal litigation, and (iii) class actions. Plaintiffs intend to prosecute this action vigorously on Class Members' behalf.

79. Further, there is no conflict between Plaintiffs and the Class Members, as the Plaintiffs are seeking to prevent the Defendants from reaping a windfall by keeping the IEEPA refunds (including statutory interest thereon) that the Plaintiffs and the Class Members paid. Thus, both Plaintiffs are similarly situated with each Class Member who paid an IEEPA customs duty to the Defendants. In other words, Plaintiff is pursuing recovery from the Defendants under the same theories of liability, thus, the differences between the Plaintiffs and the Class Members (if any) will not pit one group's interests against another.

**Superiority – Rule 23(b)(3)**

80. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, and individual joinder of all members of the Class is impracticable. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and

14

would result in significant delay and expense to all parties and could cause the Court to hear virtually identical lawsuits. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the Court, and protects the rights of each Class Member while maximizing recovery to them.

81. There will be little difficulty in managing this action as a class action because those predominating common questions apply class-wide and individual damages can be mechanically determined using the Defendants' own records, which contain addresses and data showing when each Class Member paid an IEEPA duty, the amount of the duty, and all other electronic data necessary to automatically calculate the amount of money due to each prospective Class member.

82. Joinder of all members is impracticable. Because the injury suffered by the individual Class Members may be relatively small, the expense and burden of individual litigation make it impossible for members of the proposed Class to individually redress the wrongs done to them.

83. In the alternative, the Class may be certified under the provisions of Fed. R. Civ. P. 23(b)(l), and/or 23(b)(2), and/or 23(c)(4) because:

A. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for the Defendants;

B. The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

C. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole; and

D. Some or all of the particular issues identified above are such that it is appropriate to maintain this case as a class action.

## CAUSES OF ACTION

### COUNT 1 - Declaratory Relief
### (for the Plaintiffs and the Class)

84. Plaintiffs and the Class reallege the allegations set forth in paragraphs 1 – 83 above and reincorporate each allegation by reference herein.

85. An actual, justiciable controversy currently exists between the Plaintiffs and the Class with the Defendants as to whether the Defendants were acting as the Plaintiffs' and the Class Members' agents and/or fiduciaries in collecting the IEEPA duties from the Plaintiffs and the Class and remitting the IEEPA duties to the federal government.

86. An actual, justiciable controversy currently exists as to what, if any, fiduciary duties (*e.g.* duty of loyalty, duty of trust, duty of obedience, duty of full disclosure, and duty to account) the Defendants owe to the Plaintiffs and the Class regarding the IEEPA duties.

87. An actual, justiciable controversy currently exists as to how much, if any, of the IEEPA duties the Defendants obtain from the federal government because of the CIT case, which are legally owed to the Plaintiffs and the Class.

88. There exists a *bona fide* actual, present, and practical need for a declaration regarding the legal relationship, if any, between the Parties and the legal duties, if any, that flow therefrom.

16

**COUNT 2 - Breach of Fiduciary Duty**
**(for the Plaintiffs and the Class)**

89. Plaintiffs and the Class reallege the allegations set forth in paragraphs 1 – 83 above and reincorporate each allegation by reference herein.

90. The Defendants (as agents and/or fiduciaries of the Plaintiffs and the Class, for purposes of remitting the IEEPA duties to the federal government) at all relevant times owed a fiduciary duty to the Plaintiffs and the Class.

91. The Defendants' conduct (*i.e.*, in bringing the CIT case and seeking to keep the IEEPA refunds (including statutory interest thereon) is in breach of (or have anticipatorily breached) their fiduciary duties to the Plaintiffs and the Class.

92. Plaintiffs and the Class have been injured (or the injury is all but certain) as a result of the Defendants' breach of their fiduciary duties.

93. As a direct, proximate, and foreseeable result of the conduct of the Defendants, as alleged above, Plaintiffs and the Class have suffered damages for the IEEPA duties (that have been held to be unlawful by the Supreme Court) that the Defendants are attempting to improperly keep. The exact amount of the damages will be determined at trial.

94. Because the acts and omissions of the Defendants complained of herein were malicious, oppressive, and/or in reckless disregard of Plaintiffs' and the Class Members' rights, Plaintiffs and the Class are entitled to exemplary and punitive damages in an amount to be determined at trial.

## COUNT 3 - Equitable Accounting
### (for the Plaintiffs and the Class)

95. Plaintiffs and the Class reallege the allegations set forth in paragraphs 1 – 83 above and reincorporate by reference each allegation herein.

96. The Defendants had a fiduciary relationship with the Plaintiffs and the Class with respect to the IEEPA duties collected and subsequently remitted to the federal government.

97. Defendants have not disclosed how much, if any, of the Plaintiffs' and the Class Members' respective IEEPA duties the Defendants are seeking to recover from the federal government.

98. The Defendant have not disclosed to the Plaintiffs and the Class if the Defendants have made a request to the federal government to "reliquidate" the IEEPA duties the Plaintiffs paid, *see* 19 U.S.C. § 1514(c)(3), or for a "refund of duties owed," *see* 19 U.S.C. § 1504(a)(3).

99. Thus, a complete detailed accounting of the IEEPA refund/reliquidation claims is necessary to determine the precise amount due to the Plaintiffs and the Class.

100. A complete detailed accounting of the amount of the IEEPA duties the federal government has refunded/reliquidated to the Defendants is also necessary to determine the precise amount due to the Plaintiffs and the Class.

101. A remedy at law is inadequate, *i.e.*, equitable relief is appropriate, *see Ashemimry v. Ba Nafa*, 778 So. 2d 495, 498 (Fla. 5th DCA 2001) ("[w]here a fiduciary or trust relationship exists, an action for an accounting is considered equitable in nature"), because the Defendants have possession of all the documentation submitted to the federal government regarding the IEEPA duties that have been held to be unlawful by the Supreme Court.

**COUNT 4 – Unjust Enrichment**
**(for the Plaintiffs and the Class)**

102. Plaintiffs and the Class reallege the allegations set forth in paragraphs 1 – 83 above and reincorporate by reference each allegation herein

103. The Defendants knew that they received the IEEPA duties from the Plaintiffs and the Class.

104. The Defendants voluntarily accepted and the IEEPA duties from the Plaintiffs and the Class.

105. The Defendants remitted the IEEPA duties it collected from the Plaintiffs and the Class to the federal government.

106. The Defendants voluntarily submitted IEEPA duties refund claims to the federal government.

107. The Defendant voluntarily accepted (or, if not already accepted, will accept in the near future) the IEEPA duties refunds from the federal government.

108. The circumstances are such that it would be unjust for the Defendant to retain the benefit without compensating the Plaintiffs and the Class.

109. There is no adequate remedy at law because (assuming that no fiduciary duty exists) there was no contract between the Defendants and the Plaintiffs and the Class that would permit the Plaintiffs and the Class a vehicle to remedy the injustice (*i.e.*, the windfall the Defendants would otherwise obtain from the federal government).

110. The Plaintiff and the Class have been damaged by the benefit the Defendants have (or will soon have) obtained from the federal government for the IEEPA refunds.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request the following relief:

Certify the Class under Fed. R. Civ. P. 23, appoint the Plaintiffs as co-Class representatives, and appoint Plaintiffs' counsel as class counsel;

For Count 1: that the Court declare the rights, duties, and obligations of the Parties and find that: (A) the Defendants acted as the Plaintiffs' and the Class Members' agents and/or fiduciaries when the Defendants obtained the IEEPA duties from the Plaintiffs and the Class and remitted the IEEPA duties to the federal government; (B) the Defendants owe the Plaintiffs and the Class all of the fiduciary duties applicable under Florida law; and (C) the Defendants are not entitled to keep/retain the IEEPA duties (including the statutory interest thereon) the Defendants obtain from the federal government in the CIT case;

For Count 2: an award of damages in an amount to be determined at trial, plus prejudgment interest;

For Count 3: that this Court order the Defendants to perform (and subsequently transmit to the Plaintiffs and the Class) a sufficient accounting of (A) the IEEPA refund claims made to the federal government; and (B) the IEEPA refunds received from the federal government;

For Count 4: award the Plaintiffs and the Class damages and/or restitution in the amount of the IEEPA duties refunded (including statutory interest thereon), plus prejudgment interest;

For all counts: award reasonable attorney's fees, costs, and any other relief that is appropriate under the circumstances.

//

//

//

//

Respectfully submitted,

/s/ Joseph A. DiRuzzo, III                                       March 5, 2026
Joseph A. DiRuzzo, III
Florida Bar No. 0619175
MARGULIS GELFAND DIRUZZO & LAMBSON
500 East Broward Blvd., Suite 900
Ft. Lauderdale, FL 33394
954.615.1676 (o)
954.827.0340 (f)
jd@margulisgelfand.com

/s/ Daniel M. Lader
Daniel M. Lader
Fla. Bar No. 1004963
MARGULIS GELFAND DIRUZZO & LAMBSON
500 East Broward Blvd., Suite 900
Ft. Lauderdale, FL 33394
954.615.1676 (o)
954.827.0340 (f)
dan@margulisgelfand.com

/s/ Justin K. Gelfand***
Justin K. Gelfand
MARGULIS GELFAND DIRUZZO & LAMBSON, LLC
7700 Bonhomme Avenue, Suite 750
St. Louis (Clayton), Missouri 63105
314.390.0230 (o)
314.485.2264 (f)
justin@margulisgelfand.com

*** *Admission Pending Pro Hac Vice*



Address: **Verstappen.com BV**
Tolhuisweg 2
6071 RG Swalmen
Netherlands
COC: 70784930
VAT: NL858458172B01
IBAN: NL41RABO0316478113
BIC: RABONL2U
EORI: NL858458172

E-mail: support@verstappen.com
Website: www.verstappen.com

## Recipient

Nicholas Metcalf
1323 20th Street S 1501
22202 Arlington
United States

## Invoice

Nicholas Metcalf
1323 20th Street S 1501
22202 Arlington
United States

## Order

**Invoice number**: 1487417
**Invoice date**: 25-10-25
**Customer number**: 589031
**Shipping**: FedEx



Incoterm: DDU

| Item code | Description | Quantity | Weight (g) | Unit price | Discount | VAT | Amount |
|---|---|---|---|---|---|---|---|
| 1 | Red Bull Racing - Team Polo 2024 - kids - TJ5288-190 - 140-146 / Donkerblauw - Intrastat: 6105201000 - Country of origin: CN | 1 | 0.00 | 34.76 | - | 0% | 34.76 |
| 1 | Red Bull Racing Team Polo 2023 - Kids - TJ2645 - 152-158 / Donkerblauw - Intrastat: 610520000080 - Country of origin: CN | 1 | 0.00 | 27.80 | - | 0% | 27.80 |
| 1 | 1:4 Helm USA 2024 Max Verstappen - 1050001352 - 1:4 / Blauw - Intrastat: 95030095 - Country of origin: Th | 1 | 250.00 | 92.69 | - | 0% | 92.69 |
| 1 | Max Verstappen fotokaart - TMC_100002555 - One size / Meerkleurig - Intrastat: 4817200000 - Country of origin: NL | 1 | 100.00 | 0.00 | - | 0% | 0.00 |

| **Promotion** | | | |
|---|---|---|---|
| 1+1 Teamline | - 27.80 | - 0.00 | - 27.80 |

| **Shipping** | | | |
|---|---|---|---|
| United States | + 10.95 | + 0.00 | + 10.95 |

| **Total weight** | 0.35KG | |
|---|---|---|

| **Subtotal** | **Excl. Tax** | **Tax** | **Incl. Tax** |
|---|---|---|---|
| | $ 138.40 | $ 0.00 | $ 138.40 |

| **Total** | **Excl. Tax** | **Tax** | **Incl. Tax** |
|---|---|---|---|
| | $ 138.40 | $ 0.00 | $ 138.40 |

 Gmail

**Nicholas Metcalf <nickrmet@gmail.com>**

**Import charge payment due for your FedEx shipment 394658156948**
1 message

**FedEx** <noreply@fedex.com>                                                      Sat, Nov 15, 2025 at 1:11 PM
Reply-To: noreply@fedex.com
To: nickrmet@gmail.com



# Your duties, taxes, and fees are due.

Completing this payment online can help avoid any unnecessary delays.

**Tracking ID**

**394658156948**

# Payment due

USD 62.42

PAY NOW

# Why do I need to pay duties, taxes and fees?

- Duties and taxes are collected to pay for customs services and protect local industry. You generally have to pay them at the time of import before goods are released for delivery.
- Additional fees may be charged for processing.
- Learn more about duties, taxes and fees here.

Got a question?

**CONTACT US**

1. Use of FedEx Import Tool is governed by our Terms of Use, Privacy Statement and Global Privacy Policy.
2. This email contains a secure link to FedEx Import Tool. For your security, do not share this email or the link with others.

© 1991 - 2025 FedEx. All rights reserved.Please read our privacy policy and our terms and conditions that govern your use of any of our services as further defined therein.

ID ENS 9000

**FedEx**
Order Placed

**−$62.42**

ℹ️ Your payment method will be charged when FedEx completes your order.

**Seller info**

FedEx

**Transaction ID**

O-
2MJ77729WK27312
30

**Details**

| | |
|---|---|
| Amount | $62.42 |
| **Total** | **$62.42** |



# FedEx® Billing Online

| | Invoices › **Invoice Details** › Shipment Details |

---

## SHIPMENT DETAILS

## Tracking ID 883242750449

 **Your credit card is no longer valid.**
Update card

### BILLING INFORMATION

| | |
|---|---|
| **Tracking ID number** | 883242750449 |
| **Invoice number** | 2-419-37512 |
| **Account number** | 2071-0801-1 |
| **Invoice date** | 08/25/2025 |
| **Due date** | 08/25/2025 |
| **Total billed** | $47,120.86 |
| **Tracking ID balance due** | $0.00 |
| **Status** | Closed |

### TRANSACTION DETAILS

#### Sender information

MORENO BLOM
BLOMSON INTERNATIONAL BV
A. HOFMANWEG 51
HAARLEM NH 2031
NL

#### Recipient information

DANNY ISRAELIAN
CYCLE LIMITED
990 SOUTH ROGERS CIRCLE
BOCA RATON FL 33487
US

 Shipments

---

Shipment details ⌄

---

| | |
|---|---|
| **Ship date** | 08/04/2025 |
| **Tendered date** | |
| **Payment type** | Recipient |
| **Service type** | FedEx 1Day Freight |
| **Zone** | |
| **Package type** | Customer Packaging |
| **Actual weight** | 2580kgs |
| **Rated weight** | 2580kgs |
| **Pieces** | 9 |
| **Rated method** | |

ASK FEDEX

Service zip code
Name of signer

## Payments and charges

### Charges ⌃

**ANCILLARY CHARGES AND CUSTOMS FEES**

| | | |
|---|---|---|
| Additional Entry Line Items Fee | $10.50 USD | $10.50 USD |
| Storage Fee | $1,051.60 USD | $1,051.60 USD |
| Merchandise Processing Fee | $634.62 USD | $634.62 USD |
| Customs Duty | $45,424.14 USD | $45,424.14 USD |
| **Total duties, taxes, customs, other fees** | $47,120.86 USD | **$47,120.86 USD** |

## Historical Reference

### Customs ⌃

| | |
|---|---|
| **Entry Date** | 08/18/2025 |
| **Entry Number** | 79918975576 |
| **Customs Value** | €195,098.00 |

### Reference ⌃

**ORIGINAL REFERENCE**

| | |
|---|---|
| **Customer Reference** | NO REFERENCE INFORMATION |
| **Reference #2** | |
| **Reference #3** | |
| **Department number** | |

## Messages

Additional Entry Line Items Fee - This fee is based on the number of additional lines of classification. This entry had 3 additional line(s).

Shipment placed in storage for 5 days.

Improper/missing regulatory paperwork

© FedEx 1995-2026

Site Map   |   Cookie Consent   |   Terms of Use   |   Privacy & Security   |   Ad Choices



FedEx® Billing Online | **Invoices** › **Invoice Details** › Shipment Details

## SHIPMENT DETAILS

## Tracking ID 883280801710

 Your credit card is no longer valid.
Update card

| BILLING INFORMATION | | TRANSACTION DETAILS |
|---|---|---|
| | | **Sender information** |
| **Tracking ID number** | 883280801710 | MORENO BLOM |
| **Invoice number** | 2-420-37285 | BLOMSON INTERNATIONAL BV |
| **Account number** | 2071-0801-1 | A. HOFMANWEG 51 |
| **Invoice date** | 08/26/2025 | HAARLEM NH 2031 |
| **Due date** | 09/10/2025 | NL |
| **Total billed** | $34,040.58 | **Recipient information** |
| **Tracking ID balance due** | $0.00 | DANNY ISRAELIAN |
| **Status** | Closed | 990 S ROGERS CIRCLE SYITE 1 |
| | | BOCA RATON FL 33487 |
| | | US |

 ## Shipments

Shipment details ⌃

| | |
|---|---|
| **Ship date** | 08/04/2025 |
| **Tendered date** | |
| **Payment type** | Recipient |
| **Service type** | FedEx 1Day Freight |
| **Zone** | |
| **Package type** | Customer Packaging |
| **Actual weight** | 287kgs |
| **Rated weight** | 287kgs |
| **Pieces** | 1 |
| **Rated method** | |

ASK FEDEX

Service zip code
Name of signer          D.DANNY

## Payments and charges

Charges                                                                    ⌃

**ANCILLARY CHARGES AND CUSTOMS FEES**

| Merchandise Processing Fee | $634.62 USD | $634.62 USD |
|---|---|---|
| Additional Entry Line Items Fee | $10.50 USD | $10.50 USD |
| Customs Duty | $32,728.20 USD | $32,728.20 USD |
| Disbursement Fee | $667.26 USD | $667.26 USD |
| **Total duties, taxes, customs, other fees** | $34,040.58 USD | **$34,040.58 USD** |

## Historical Reference

Customs                                                                    ⌃

| Entry Date | 08/08/2025 |
|---|---|
| **Entry Number** | 79915274247 |
| **Customs Value** | €197,134.50 |

Reference                                                                  ⌃

**ORIGINAL REFERENCE**

| Customer Reference | NO REFERENCE INFORMATION |
|---|---|
| Reference #2 | |
| Reference #3 | |
| Department number | |

## Messages

Additional Entry Line Items Fee - This fee is based on the number of additional lines of classification. This entry had 3 additional line(s).

Improper/missing regulatory paperwork

© FedEx 1995-2026

Site Map  |  Cookie Consent  |  Terms of Use  |  Privacy & Security  |  Ad Choices